# Atlanta & B. A. L. Ry. *v.* Alexander.

## *Damages for Injury to Employe.*

(Decided May 24, 1909.   49 South. 792.)

1. *Master and Servant; Injury to Servants; Safe and Unsafe Way.*—An employe is guilty of contributory negligence who knowingly selects a dangerous way to perform his employment when a safer way is apparent to him.

2. *Same; Effect.*—Where the order of causation between the injury to the engineer and the defect in the throttle valve of the engine was so connected that the defect might be said to be the proximate cause of the 'injury, the failure of the engineer to forestall, by prudent means at hand, the movement of the engine caused by the defect, was concurrent with the negligence of the master, and so contributed to the injury as to deny recovery.

3. *Same.*—Where the engineer knew of a defect in the throttle valve and its effects upon the movements of the engine and knew the means by which the engine could be rendered stationary, and failed to adopt such means, and was injured on account of the engine moving while he was undertaking to put the front wheels of the engine back upon the rails, he was as a matter of law guilty of contributory negligence for failing to use ordinary care to prevent any movement of the engine while in front of it.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by P. Z. Alexander against the Atlanta & Birmingham Air Line R. R. Co., for injuries caused by the forward movement of an engine of which he was in charge, while in front of it attempting to get the derailed front wheels on the track. Judgment for plaintiff and defendant appeals.' Reversed and remanded.

TILLMAN, GRUBB, BRADLEY & MORROW, for appellant.—The court erred in overruling appellant's demurrer to the 3rd count of the complaint.—*Whatley v. Zenida Coal Co.,* 122 Ala. 119; *Ensley Ry. Co. v. Chewning,* 93 Ala. 24; *K. C. M. & B. v. Burton,* 97 Ala. 240; *L. & N. v. Jones,* 130 Ala. 456. The testimony should have been confined to interstate's earning capacity at or about the

time of his injury.—*Central F. Co. v. Bennett,* 144 Ala. 184. Counsel discuss other assignments of error as to evidence, but without citation of authority.

The functions of the relief valve were to allow the accumulated steam in the pipes and cylinders to escape, and to prevent such pressure as would be dangerous, and a prudent engineer should have opened the relief valve before going under the engine, and hence, the defendant should have been allowed to show the purpose of the valve and that the engineer failed to open it before getting under the engine.—*L. & N. v. Binion,* 107 Ala. 645; *same v. Mothershed,* 97 Ala. 261; *A. G. S. v. Lynn,* 103 Ala. 134. The court erred in giving charge 5 for the plaintiff.—*T. C. I. & R. R. Co. v. Hamilton,* 100 Ala. 252; *McGhee v. Cashin,* 130 Ala. 568. The court should have given the charge requested by the defendant asserting that if plaintiff opened the cylinder stops or caused them to be opened then he could not recover.—*L. & N. v. Quick,* 125 Ala. 553; *Williams v. Woodward,* 106 Ala. 254; *W. of A. Ry. Co. v. Mutch,* 97 Ala. 194; *Pryor v. L. & N.,* 90 Ala. 32. The affirmative charge as to the 1st count should have been given for defendant.—*Tuscaloosa W. W. Co. v. Herron,* 131 Ala. 81; *Bridges v. T. I. & R. R. Co.,* 109 Ala. 287; *L. & N. v. Stutts,* 105 Ala. 268; *Bir. R. & E. Co. v. Allen,* 99 Ala. 359. The affirmative charge as to the 2nd count should have been given since issue was joined upon the plea of the statute of limitations, and it was proven.—*N. C. & St. L. v. Hill,* 146 Ala. 240; *Rasco v. Jegerson,* 38 South. 246. The general affirmative charge should have been given on the theory that the plaintiff selected a known dangerous way where there was a safe way to perform his employment.—*Southern v. Arnold,* 114 Ala. 183; *George v. M. & O.,* 109 Ala. 245; *Davis v. Western of Ala.,* 107 Ala. 626; *R. & D. R. R. Co. v. Bivins,* 103

[Atlanta & B. A. L. Ry. v. Alexander.]

Ala. 142; *L. & N. v. Orr,* 91 Ala. 548; *M. & B. R. R. Co.
v. Holborn,* 84 Ala. 137.

TOMLINSON & McCULLOUGH, and STALLINGS & DREN-
NEN, for appellee.—"The negligence of the defendant,
as alleged, and the contributory negligence of the plain-
tiff, as alleged, were properly submitted to the jury."—
*Ills. Car Co. v. Walsh,* 132 Ala. 490; *Holmes v. Bir-*
*mingham So. Ry. Co.,* 140 Ala. 208; *Moulton v. L. & N.
R. R. Co.,* 128 Ala. 539; *Shea v. Manning,* 141 Ala. 628.
"The degree of diligence required of a person charged
with contributory negligence is measured by the proba-
ble conduct of a person of ordinary prudence and judg-
ment situated under like circumstances."—*So. Ry. Co.
v. Howell,* 135 Ala. 640. "It is necessary to prevent re-
covery that the servant must do that which is danger-
ous in a negligent manner in order for it to be contrib-
utory."—5 Mayfield's Digest, Sec. 41, p. 639.
"The master owes a duty to the servant to use care
in the maintenance of its machinery as well as in pro-
viding it originally."—*Houston Biscuit Co. v. Dyer,*
135 Ala. 168.

McCLELLAN, J.—The plaintiff was in the employ-
ment of the defendant (appellant) in the capacity of
locomotive engineer. The complaint ascribes the injury,
for proximate cause, to a defective throttle valve. The
defenses were, aside from the general denial, contribu-
tory negligence and assumption of risk. The plaintiff
testified in his own behalf. His testimony, as presented
to us, abounds in inconsistent statements. We preter-
mit them, however, and take up what seems to us the
decisive question, viz., contributory negligence as af-
fecting the right of this plaintiff to recover.
The plaintiff admitted his previous knowledge of the
defective condition of the throttle valve, and the effect

thereof to cause the engine to move, though undirected, on account of the steam passing the defective valve in the cylinders. He had complained to a superior of this condition, and told him the engine was dangerous; but the foreman said he could remedy the defect—that he was not equipped to do it—at Birmingham. The plaintiff knew that it had not been repaired. Just prior to plaintiff's injury, the forward trucks of the engine had become derailed. The plaintiff testified that he thereupon applied the brakes and shut off the steam; that he left the brakes set, and that he left the reverse lever where it was when the engine stopped—that is, "in a forward motion." When the throttle valve is in proper condition, the movement of it controls absolutely the admission of steam into the cylinders; but when it leaks, as this one did, steam enters the cylinders in proportion to the size of the openings made by the failure of the valve to perform its function.

The plaintiff testified, as do other witnesses, with reference to the relief given the steam pressure in the cylinders by opening the cylinder cocks, and this act of relief is serviceable to prevent such an accumulation of steam, through a defective throttle valve, in the cylinders as would cause the engine to move. The process of opening the cylinder cocks may be dismissed from further consideration, and this on the assumption, quite doubtful in the evidence, that plaintiff properly employed it. The other means suggested, it seems, by the merest prudence, of one experienced in that regard, to prevent the engine from "creeping" by reason of steam passing the defective throttle valve, was (1) to scotch the wheels, or to "chock them, and (2) to stop the engine on its "center" and place the reverse lever on center, which, if done, would close all parts through which steam could enter the cylinders, and (3) if not possi-

ble to stop the engine on its "center," then the placing of the reverse lever "on center" would operate to prevent the admission of one-half the steam into the cylinders, through the defective valve, as would be admitted with the reverse lever not so "on center." This plaintiff neither scotched the wheels of his engine nor placed the reverse lever "on center." The reason he gives for his failure to scotch the wheels remaining on the track was the fact that some of them were on the ground. After plaintiff had done what has been stated, the plaintiff got beneath the cylinders on the right side, land down on his stomach, and undertook to so locate a frog as to slue the derailed front wheels back to the rails. While doing this there is some proof that the engine moved, and thereby brought a part of the plaintiff's body in contact with the slide valve to the cylinder cocks, caused them to open, and hot water was poured therefrom into his ear, inflicting the injury complained of.

We think this principle, often stated by this court, applicable to forbid a recovery on the case made by this record: "It is a familiar principle, which common sense, as well as the rules of law, ought to teach any one, where one in the employ of a railroad knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence."—R. & D. R. R. v. Bivins, 103 Ala. 149, 15 South. 515; George v. M. & O. R., 109 Ala. 245, 256, 19 South. 784. This plaintiff had full knowledge of the defect described, and knew what effect it would have upon the movement of the engine. He knew, also, the means whereby it could be made stationary. One of these, if employed, would have, according to his testimony, reduced by half the entrance of steam into the cylinder wherefrom the motive power is applied direct-

[Atlanta & B. A. L. Ry. v. Alexander.]

ly on such engines. Such a diminution necessarily demonstrates that, if the reverse lever had been placed "on center," it would have taken twice as long for the cylinder to accumulate, through the defective valve, sufficient team pressure to move the engine, than if the reverse lever was left off "center," as was done by plaintiff. In other words, in proportion as the application of any appliance on that engine, ready at hand to the engineer, tended to retard the passage of steam through the defective valve to the cylinders, just in that proportion was the engineer's stationary position the longer maintainable. Intending to take the position plaintiff did beneath the cylinder, however proper and necessary that was, it was his duty and the dictate of common prudence for him to exercise at least ordinary care to employ all reasonable means to prevent the engine from moving at all, or to postpone as long as possible its moving from a cause of which he was then fully informed. That he did not do so is obvious from his own statement. The only excuse offered is that the "pony truck and the front trucks" were on the ground, "but the other wheels were not." He could not qualify his duty by the presence of the condition ascribed, as quoted, by him. He cannot be allowed to not observe his duty, preservative of his own safety, upon any speculation as to the retarding effect of some only of the wheels of the engine being off the rails or on the ground. His skilled plan to replace the derailed wheels demonstrated his knowedge of and faith in the power of those remaining on the rails to enable the engine to move, notwithstanding those on the ground, and to readjust itself.

He failed in his duty. Did that contribute to his injury? If the order of causation between the injury and the defective valve was so connected as that the defect-

ive valve may be denominated the proximate cause of the injury, then necessarily the nonobservance of duty to forestall by prudent and presently afforded means the movement of the engine, because of the defective valve, at least concurred with the negligence of the defendant in that regard and contributed to the injury. If it was his duty to take measures to prevent the "creeping" of the engine, a thing he knew that engine would do unless prevented, and he failed to observe his duty in that respect, it would seem to be manifest that the undirected movement of the engine was ascribable to his breach of duty to take the proper preventive means. His duty arose subsequent in order to that breached by the use by defendant of an engine defective as this one was alleged to be—arose because of the defect of which and its results he knew. He neither scotched or choked the engine to prevent its movement, nor set the reverse lever so as to minimize the hazard from its movement, while he was beneath the cylinder in performance of his duty to restore the derailed wheels of the engine.

These considerations render treatment of other questions unnecessary, and lead, of course, to the reversal of the judgment below. The cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.