# Epsey *v.* Cahaba Coal Co.

*Injury to Servant.*

(Decided February 14, 1914. 64 South. 753.)

1. *Master and Servant; Injury to Servant; Fellow Servant.*—Under the common law a master was not liable for the death of a servant caused by defective machinery, where the duty of keeping such machinery in proper condition was delegated to a fellow servant, and the death was due to the negligence of such fellow servant.

2. *Same; Defective Appliances.*—Although the injury to a servant is caused by the defective condition of machinery, the master is not liable under section 3910, Code 1907, unless the defect is due to the negligence of the master, or some person charged with seeing that the ways, works, machinery were in proper condition, etc.

3. *Same.*—In order to recover under the provision of section 3910, Code 1907, it is essential that there be evidence tending to show negligence within the condition of the statute.

[Epsey v. Cahaba Coal Co.]

4. *Same; Inspection, Etc.*—Subdivision 1, section 3910, Code 1907, contemplates. inspection in predicating negligence because of the failure of the master to discover defects; the duty to inspect exists just as the duty to remedy defects exist, although such duty may be delegated to a competent servant.

5. *Same.*—Under such section the character and frequency of the inspection and tests must depend upon the subject of the duty, as for instance, whether it is machinery peculiarly subject to wear, etc.

6. *Same.*—It is the duty of the master to exercise such care and diligence as a reasonably prudent man will use under similar circumstances with reference to duty to repair and inspect the machinery, etc.

7. *Same; Tools; Machinery, Etc.*—Where the duty of inspection is entrusted to a servant, and after reasonable time and opportunity has been afforded, such duty is not performed, and injury to another servant results proximately therefrom, the omission is negligent, rendering the master liable unless defeated by some affirmative defense.

8. *Jury Question.*—Under the evidence in this case it was a question for the jury to determine whether proper inspection would have discovered the defect alleged to have caused the injury.

APPEAL from Shelby Circuit Court.

Heard before Hon. A. H. ALSTON.

Action by Joseph W. Epsey, administrator, against the Cahaba Coal Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Joseph W. Epsey sues as administrator of the estate of J. P. Epsey, for the death of his intestate, and alleges that prior to February, 1912, J. P. Epsey was in the employment of defendant, Cahaba Coal Company, a private corporation, and was operating a stationary or compressing engine, used in connection with the business of said defendant, and while engaged in the discharge of his duties, under said employment, plaintiff's intestate was killed. The first count alleges death to have been proximately caused by reason of a defect in the condition, ways, works, etc., in that the valve of the engine leaked, thereby causing steam to accumulate in the cylinder, and the engine to start in motion without pulling the controller or lever. The second count is the same as the first, but varies somewhat in the phraseolo-

gy.   The third count alleges simply that the engine was defective.   The fourth count is for a negligent failure to provide plaintiff's intestate with reasonably safe appliances in this:   That the engine used by defendant had a leaky throttle valve.   The fifth count alleged wantonness of defendant's servants or agents while acting within the line and scope of their employment in that, knowing that the throttle valve was in a leaky condition, and with such knowledge, they permitted plaintiff's intestate to operate said engine while in this condition.   The sixth count is the superintendent's negligence count, alleging the superintendent to be unknown.   The seventh count is the superintendent's negligence count, alleging the superintendent to be one Dunaway.   The eighth count is the conformity to orders or direction count; the ninth the same as eighth, but giving the name of Dunaway as the negligent superintendent who gave the negligent order.

The pleas were contributory negligence, in that in the performance of his duties, and of the knowledge and appreciation of the danger of so doing, plaintiff's intestate negligently reached his head and arm through the spokes of the flywheel of said engine, knowing that at that time said engine was pinched to the center, and was ready to start after the steam valve on said engine opened, and said wheel of said engine slowly turned over, and said intestate's head and neck were caught by the driving rod and spoke of the driving wheel, and he was killed.   This defense is set up in various pleas in various ways.

FRANK S. WHITE & SONS, for appellant.   Under the evidence in this case the question of duty to inspect and whether such inspection would have discovered the alleged defect, should have been decided by the jury, and

the court erred in directing a verdict.—*Travis v. Sloss-S. Co.,* 162 Ala. 605; *L. & N. v. Wilson,* 162 Ala. 588; *A. G. S. v. Yont,* 165 Ala. 537. The court also erred in permitting Dunaway to testify that the engine was in a reasonably good condition.—*C. of Ga. v. Bagley,* 55 South. 894; *L. & N. v. Bogue,* 58 South. 392.

CHARLES A. CALHOUN, and BROWN, LEEPER & KOENIG, for appellee. Under the evidence in this case the court properly directed a verdict for the defendant.—*M. & O. R. R. Co. v. Thomas,* 42 Ala. 672; *Smoot v. M. & O. R. R. Co.,* 67 Ala. 19; *L. & N. R. R. Co. v. Allen,* 78 Ala. 501; *L. & N. R. R. Co. v. Binion,* 98 Ala. 570; *Tenn. Coal Iron & R. R. Co. v. Harmes,* 167 Ala. 248.

McCLELLAN, J.—The action is by the personal representative of a servant (J. P. Epsey) against the master (appellee) for negligently causing intestate's death while intestate was engaged in the service of the master. The cause of action was undertaken to be stated in a number of counts. Some were drawn under the first subdivision of the Liability Act (Code, § 3910), and others were intended to declare upon the breach of the common-law duty to exercise reasonable care to afford the servant reasonably safe appliances with which to do his work. The trial court, at defendant's request, gave the general affirmative charge, on the whole case, for the defendant; and so, on the theory that there was no count in the complaint that did not contain material averments to sustain which there was an entire failure of proof.

Under the doctrine declared in *Tutwiler C. C. & I. Co. v. Farrington,* 144 Ala. 157, 167, 39 South. 898, treating the sixth count, it must be ruled that the evidence here failed to sustain the counts rested on the common-law

duty summarily stated above. It appears that the duty of keeping the machinery in question in proper condition was committed, as might have been done, to fellow servants of intestate; and that if negligence affected the unsafe condition thereof due to want of due care or diligence in inspection or in the want of due care or diligence in repairing the defective condition, it was that of fellow servants of the intestate. We can see in the evidence no other possible conclusion as respects the counts based on the breach of the common-law duty mentioned. So the impropriety vel non of the court's action in thus instructing the jury must be determined with reference to the counts drawn under the first subdivision of the Liability Act.

The conclusions of fact we will state, drawn from the whole evidence, may have been attained by the jury if the charge of the court had not forbidden the exercise of that function by the jury. The condition of the engine (stationary) was defective in respect of the throttle valve which, when in perfect condition, would prevent, absolutely, the passage of steam from the boiler to the place whereat its pressure would put the engine in motion. Hence the propriety of the affirmative charge could not be predicated of the failure of proof in respect of defect in the condition of the machinery. If a defect in the condition, counted on in the complaint, is found to have existed and to have caused the injury suffered by the servant, still the master cannot be held liable "unless the defect therein   *   *   * arose from, or had not been discovered or remedied owing to the negligence of the master or employer, or of some person in the service of the master or employer, and intrusted by him with the duty of seeing that the ways, works, machinery, or plant were in proper condition." It is, as has been often ruled here, essential to a

recovery on a count or counts declaring on a status within the first subdivision of the Liability Act, that evidence be adduced tending to show negligence within the quoted condition of the act. Under this provision of the act the requisite negligence may be that of the master or that of a servant or servants commissioned as the quoted condition stipulates. We have stated that the evidence shows that the duty stipulated was "intrusted" to another servant. So the possible evidential lead to prima facie right to recover must be found, if at all, in evidence, at least, to show that the one so "intrusted" was negligent within the provision of the quoted condition of the act. There being evidence tending, as stated, to show that there was a defect in the condition of the engine, described in the complaint, the issue of fact was, for the purpose of testing the right vel non of the defendant to the affirmative charge on the whole case under the theory before stated, narrowed to this: Was there evidence, or reasonable inference from evidence, tending to show negligence, for which defendant was accountable, in respect of the discovery or remedy of the defect in condition of the engine?

The Liability Act, in the particular that it predicates negligence of the failure of the master to discover defects in the condition of the ways, etc., contemplates inspection to the end indicated. The duty to inspect exists, just as the duty to remedy defects in conditions exists. The Liability Act has not, in this particular, extinguished the duty of inspection. With us the duty of inspection, in a case of the kind in hand, may be delegated to a competent servant in whose selection the master has employed the requisite care. The measure of care and diligence for the proper performance of the duty of inspection for defects in condition, etc., is the exercise and employment of the care, prudence, and dil-

igence a reasonably prudent man would exercise and employ, under similar circumstances, to ascertain whether there are defects in the condition of the way, works, machinery, or plant—bearing in mind always that the master is never accountable as an insurer in the premises and, also, that the character and frequency of the inspection must depend upon the subject of the duty, whether it is machinery peculiarly subject to wear and to self-created deficiencies in its vital parts, or some other agency of the master's business in which normal use does not, ordinarily, create defects in its condition. If the duty of inspection is "intrusted" to a servant and is not, after reasonable time and opportunity are afforded, performed, and injury to another servant proximately results therefrom, the omission is negligence to liability, unless defeated by affirmative defense. So, too, the omission by one "intrusted" to exercise, after reasonable time and opportunity are afforded, due care and diligence to repair—to remedy, as the statute says —the known defect, and in proximate consequence thereof another servant is injured, that omission is negligence to liability, unless defeated by affirmative defense. Reasonable time and opportunity to discover or to repair are factors. If either are absent, negligence is not shown.—*Clements v. A. G. S. R. R. Co.*, 127 Ala. 166, 28 South. 643.

The evidence in this record tends to show, at least, that a throttle valve, when new, may be perfect in its adjustment, thereby entirely preventing, when closed, the passage of steam through or by it; that the effect of steam and hot water upon the metal or the mechanism of such a valve, "its seat," will gradually cause it to leak; that the throttle valve in question did leak, and was leaking some hours before the intestate's injury, thereby permitting steam to pass to the point in the

cylinder whereat the steam power would apply, if in sufficient quantity, to put the engine in motion; that the proper process for turning on the steam, by intestate who operated the engine, was by opening the throttle valve, though there was another valve near the boilers at or near the head of the "steam line," generally operated by the fireman; that, when in good condition and closed, would prevent the passage of steam into the steam line leading to the engine; that when the engine stopped, about three hours before Epsey's injury, it came to a rest "on center," wherefrom steam power alone could not start it; that a bar was furnished to "pinch" the enginee "off center;" that Dunaway had, to quote him here, "just finished my [his] work a minute or two  *  *  *  and was getting ready to start it up, and was pinching it off the center with this bar there for the purpose, and there was some little screaking noise about the engine as I [he] was pinching it off that attracted Mr. Epsey's attention, and he threw up his hand and said, 'Hold on a minute,' or something like that, I do not remember the exact words, but just as he said that the engine had just passed the center, and he put his head in the flywheel some way to look where the noise was and see if he could find out what was the matter, and at the same time the engine had just passed the center and started and just dropped over on the other center and stopped again and caught Mr. Epsey's head between the side rod and the flywheel. *  *  *  What caused the engine to move was the valve just leaking enough so that steam and hot water accumulated in the cylinder to have pressure enough to turn it half over. I would not call the valve in perfect condition at that time." Later, over plaintiff's objection, the witness testified that the engine, in that condition of valve-leak, was in "reasonably good condition." This

witness also testified that the superintendent inspected this engine a number of times while witness was there, but no one ever told him (witness) that the cylinder needed repairing, though that was in the line of witness' duty under his employment.

We have ruled that "wear" of a part of an instrumentality is some evidence of the existence of a defect in condition of such long standing as to support a finding of such want of due care and diligence, either in discovering the defect in condition or in remedying it, as amounts to negligence.—*A. G. S. R. R. Co. v. Yount,* 165 Ala. 537, 543, 51 !South. 737; *B. R. M. Co. v. Rockhold,* 143 Ala. 115, 126, 42 South. 96. On the evidence before us it cannot be affirmed, as a matter of law, that proper inspection of this engine would not have disclosed its defective condition in respect of the throttle valve—a defect which the evidence tends, at least, to show was probably the result of long and gradual impairment by steam and hot water of the valve seat. And it cannot be affirmed, as a matter of law, that there was no evidence inviting a finding that time and opportunity were not afforded defendant to discover, by proper inspection, this defect in condition and to have remedied it.

The affirmation by Dunaway that the engine was in "reasonably good condition" appears to have been explained by him on the redirect examination. His utterance, in that phrase, seems to have reference, according to the later statement by him, to the condition with reference to when a sufficient accumulation of steam and hot water, through the leaking valve, in the cylinder would be sufficient to impart motion to the engine. He seems to have somewhat confused terms descriptive of condition in which the machinery was in respect of the valve in question. At any rate, his testimony was

by no means conclusive to the effect that this engine's condition was not defective.

The issues were for the jury on both the complaint and the pleas, the substance of which the reporter will summarily state. The evidence is silent as to Epsey's knowledge of the fact that, by accumulated steam through the leaking valve, the engine would involuntarily start or continue to move. The evidence does not make a case under the doctrine of *A. & B. A. R. R. Co. v. Alexander*, 161 Ala. 382, 49 South. 792.

For the error in giving the affirmative charge for defendant, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.