# Fuller *v.* Lanett Bleaching & Dye Works.

## *Injury to Servant.*

(Decided December 17, 1914.   Rehearing denied January 21, 1914.
67 South. 378.)

1. *Master and Servant; Injury to Servant; Complaint.*—Where the complaint alleges that the elevator and the machine by which it was hoisted were defective, it separates the elevator from the hoisting machine, and separately specifies the defectivenes of each, and in order to recover the injured employee must prove that each was separately defective.

2. *Same.*—Where the action was for injuries to an employee by the fall of a freight elevator, a complaint which alleges that the superintendent was negligent in ordering the employee, outside of his regular employment, to work on the defective elevator, and at the machinery thereof, which was defective, does not state a cause of action under subdivision 2, § 3190, Code 1907.

3. *Same; Injury to Servant; Failure to Inspect.*—Under the evidence in this case it was for the jury to say whether a freight elevator was properly inspected for the safety of employees using it.

4. *Same; Inspection of Appliances.*—The inspection of machinery by an employer must be such as an ordinarily prudent person would make under the circumstances, and a mere visual inspection of external conditions, does not satisfy the obligation imposed on the employer where the employees' safety depends on the soundness of the material of which the machinery is composed, or on the firmness of which the separate parts are attached to each other.

5. *Same; Complaint; Elevator.*—Where the complaint alleges that the elevator was defective, such complaint does not confine the use of the word "elevator" to the car, but includes the machinery to which the car is attached, and by which it is operated, and will support a recovery for any defect in the car or the machinery.

6. *Same; Defective Machinery; Jury Question.*—Under the evidence in this case it was a question for the jury whether the freight elevator or the machinery connected with it was defective, so as to authorize a recovery for injury to an employee by the fall of the elevator.

APPEAL from Chambers Circuit Court.

Heard before Hon. A. H. ALSTON.

Action by John K. Fuller against the Lanett Bleaching and Dye Works. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

[Fuller v. Lanett Bleaching & Dye Works.]

Plaintiff, while engaged in the services of defendant, as a tender of its dye cans, was injured by the fall of a freight elevator used as part of defendant's dye works for the raising and lowering of bales of cotton to and from the first and second floors of its building. The elevator was a simple one operated by hand, and the car was hoisted on a weighted rope, hung on a pulley, with shafting and cogwheels. The wheel was fitted to the shafting by a metal key 2 inches long and three-eighths of an inch square, which was fitted in and driven through the shafting and the hub of the gear. One bale weighing about 500 pounds had been dumped on the elevator, and, while defendant was standing on the elevator floor a second bale was dumped from the truck, dropping about 10 inches, upon the floor, whereupon instantly the elevator car broke from its fastenings above and dropped down to the first floor, a distance of about 12 feet. This occurred in the forenoon. The evidence is without dispute that the car fell because the key dropped out of its socket, and it appears also that the immediate or superficial cause of the key dropping out of its socket was the jar occasion by the dumping of the second 500-pound bale on the floor of the car. The second count of the complaint is framed under subdivision 1, § 3910, and the specification is that the said elevator and the machinery by which said elevator was hoisted were defective. The third count is under subdivision 2 of section 3910, and the specification is that said superintendent, naming him, was negligent, in that he ordered, directed, and instructed plaintiff, outside of plaintiff's regular employment, to work upon said defective elevator, and at the machinery of said elevator, which was defective. The fourth count is under subdivision 3 of section 3910, and the specification is that said superintendent was negligent in that he or-

dered plaintiff, when the said elevator and the machinery by which it was hoisted were defective, to work on or about said elevator; and also in that, with knowledge of the said defective condition, he permitted and allowed plaintiff to work on or about said elevator, and did not warn or instruct him as to the said defective condition. The fifth count is a common-law count, charging the use by defendant of defective machinery in its business, which, but for the want of reasonable care and diligence, would have been known to defendant; the specifications being that the wheel or casting surrounding the shafting was old and worn, and the pin by which said wheel was fastened was old and worn, and that both wheel and pin were of insufficient tensile strength to support said elevator when loaded. The sixth count is under the first subdivision of section 3910, and the specifications of negligence are that said elevator was not securely fastened in its proper position; that the wheel or casting was old and worn; and that the pin was old and worn, and insufficient in strength to hold said elevator in place. The seventh count is framed under subdivision 2 of section 3910, and is similar to count 3, except a different superintendent is specified. The eighth count is under subdivision 1, and specifies that said elevator was defective. The trial court directed a verdict for defendant at its request.

STROTHER, HINES & FULLER, for appellant.

DENSON & SONS, for appellee.

SOMERVILLE, J.—(1) It was not necessary for the plaintiff to allege in the second count that both "the elevator, and the machinery by which said elevator was

[Fuller v. Lanett Bleaching & Dye Works.]

hoisted, were defective." But, having chosen to separate the elevator from its hoisting machinery, and to separately specify the defectiveness of each, it was incumbent upon him to prove that each was separately defective. There is nothing in the evidence suggestive of any defect in the elevator itself; and hence a material part of the case stated by the count is without support.

(2) The third count, which must be considered only with reference to its specification, obviously states no cause of action, and could not support a recovery; nor was there any evidence tending to show that the superintendent Holstun ordered plaintiff to work upon a defective elevator, and at the defective machinery thereof, as charged.

The fourth count is wholly without support in the evidence as to its material specification that the said Holstun permitted and allowed plaintiff to work on or about said elevator, with a knowledge (by Holstun) of its defective condition. There is nothing to suggest such knowledge by Holstun.

The fifth and sixth counts are also wholly without support in the evidence as to their conjunctive and cumulative specifications that the wheel or casting was old and worn; that the pin was old and worn; and that the pin was insufficient in strength to support the elevator. On the contrary, the undisputed evidence is that, although old in use, they were not worn; and also that the pin was in perfect condition and sufficient for its purpose.

The seventh count is without support in the evidence as to its main allegation; viz., that Bob Harrison was superintendent of the elevator.

As to all of these counts it is clear that the general affirmative charge for the defendant was properly given.

(3, 4) The questions presented under the eighth count are more difficult of solution. It appears without dispute that the pin and the wheel socket into which it fitted were without defect, and that the pin was properly driven in. It further appears that this pin had been in its place in this wheel for 14 years before this accident; that, about 3 months before, the master mechanic, Harrison, had inspected it closely, and found the pin in proper position and tight; and that the same pin was replaced after this accident in the same socket, and had held securely up to the time of the trial. It is therefore clear that, if the defendant has been guilty of any negligence covered by the specifications of the eighth count, it was only because the pin had finally worked itself loose in its socket, and the defendant's superintendent Kane, who had charge of the elevator, was negligent in failing to discover its condition before this accident.

The plaintiff's witness Collins, an expert machinist, testified that, if such a pin as this, used as shown, had become loose "in my opinion, that condition would have been apparent by reasonable inspection of the machinery of the elevator. It would have been apparent to inspection previous to the time it came out; you would have been able to detect it being loose. I could not say for how long before it came out. After it worked loose it may have worked out in five minutes, and it may have been a day or two coming out altogether."

Both of the plaintiff's expert witnesses, Collins and Cochran, testified to the effect that such a pin might be perfectly fitted, properly driven, and still work loose in time from constant use; but they expressed the opinion that, if tight and well fitted, it would not jump out all at once by reason of a sudden jar.

The obvious tendency of this evidence is to show that the safety of the operation of this elevator, upon which defendant's servants frequently rode in the discharge of their employment, depended upon its proper and timely superintendence by the defendant's servant in charge of it, and, further, that such supervision might reasonably demand a frequent inspection of this part of the hoisting gear.

The defendant insists that it has fully met this inferable requirement, as shown by the uncontradicted testimony of its superintendent Kane, who said (omitting redundant phrases): "I had that elevator under inspection. I see the elevator I suppose a dozen times a day, and I start a man to handling bales down on it in the morning,   *   *   *   and I go there and look at it. I did the same thing there that morning; I got there and looked at it. I would stand on the second floor   *   *   *   away from the hole of the elevator about six feet, and you see this hub and gear and pin all the time; it isn't ever out of sight. I did that that morning. When I looked at it it was just like it always had been in there in its place, I did not observe anything wrong with it. I had inspected it prior to that time every day I see the elevator. I looked up at those works every day probably a dozen times, and could see if there was anything the matter while I looked at them. I should say that I never missed a day without looking up there and looking at the works."

On cross-examination this witness said: "I am not a mechanic; I am a bleacher, finisher, dyer, and work around chemistry some.   *   *   *   I said I went by there and looked at that elevator a dozen times a day. I did not go by the elevator just for that purpose; in passing through and going through about my business I always looked up there. There wasn't anything in the

condition of that elevator that made it necessary to give it so much attention. I just looked at it; just a natural glance at it as I went by. I didn't have any such idea as that it was liable to get out of fix. With the exception of the rope, the machinery was exactly the same that had been there for 14 years."

So far as the frequency of Kane's inspection of the elevator is concerned, there can be no question of its sufficiency. See 1 Labatt on Master and Servant, § 158, and cases cited. With respect to the nature of this inspection, Mr. Labatt epitomizes the law as follows: "The character of the inspection which the master is bound to make is described by various epithets and phrases, all of which, as will be seen from the subjoined note, are essentially the logical equivalent of the proposition that the examination must be such as a person of ordinary prudence would have made under the circumstances. The question whether the examination to which the instrumentality which caused the injury was actually subjected before the accident was such as to satisfy the standard thus indicated is primarily one for the jury. * * * Whether or not the duty of a master with regard to proper inspection has been performed by the application of any given test is to be determined by considering whether that test will give indications as to the actual condition of the instrumentality in question. In the application of this principle the courts have usually proceeded upon the theory that a merely visual or ocular inspection of external conditions does not satisfy the full measure of a master's obligations, where the servant's safety depends upon the soundness of the material of which an instrumentality is composed, or upon the firmness with which the separate parts of an instrumentality are attached to each other, or upon the stability of some heavy substance." —1 Labatt on M. & S., § 161.

[Fuller v. Lauett Bleaching & Dye Works.]

We think that, under the law and the evidence, as above noted, it was a question for the jury to determine whether Kane's daily inspection of the elevator was equal to the requirements of the case for the detection of a loosened peg—a condition that might be expected to arise at any time after many years of use—and whether, if properly made, it would have discovered the defect in time to have avoided the accident. And hence we hold that the general affirmative charge was improperly given for the defendant on the eighth count.

(5) It would be too narrow a construction of the word "elevator," as used in this count, to restrict its application to the elevator car, and to exclude from its scope the machinery to which the car is attached, and by which it is operated. Very clearly, we think, the count is broad enough to support a recovery based upon any defect in car or machinery.

(6) We have considered with due care the arguments of defendant's counsel on the facts of the case with respect to this count. They insist that the evidence shows that the peg jumped out all at once, and that there is nothing from which the jury could infer that it loosened up and worked out by degrees. We think, however, that the testimony which we have quoted above may very well support a contrary conclusion, which would require its submisison to the jury.

We deem it unnecessary to review the numerous assignments of error relating to rulings on the evidence. For the error noted, the judgment will be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and DE GRAFFENRIED and GARDNER, JJ., concur.