Plaintiff Billy Ray Bellew sued Curt Sloan and K.N. "Nathan" Sloan, Jr., doing business as Sloan Sloan, based on negligence and the Employer's Liability Act, Ala. Code 1975, § 25-6-1,[1] for injuries Billy sustained while working on the roof of a house being constructed by Sloan Sloan. At the close of the plaintiff's case, the trial court directed a verdict in favor of the defendants. Bellew appeals from a judgment based on that directed verdict.
Billy was a carpenter for the Sloans, who were subcontractors. The roof of the two-story house on which Billy was working on October 14, 1983, was at the "blacked in" stage, or covered with tar paper, felt, and decking. Billy was putting the stepladders, sawhorses, and other tools on the roof about 7 a.m. He testified that as he was laying down a stepladder, his feet slipped and he fell to the ground, a distance of about 20 feet. He dislocated and fractured his left foot and ankle and currently wears a brace that extends from his foot to his knee. Bellew testified that there was some dew, as well as sawdust, on the roof and that there was a "toe board," or 2 X 4 piece of wood nailed to the edge of the front of the roof to prevent falling, but no toe board on the back of the roof where he was working.
The trial court granted a directed verdict on the Bellews' two remaining counts for common law negligence and, under the Alabama Employer's Liability Act, for negligence and injury due to a "defect in the ways, works, machinery, or plant connected with or used in the business of the master or employer." The court stated in its order that "the plaintiff failed to offer any evidence establishing any standard of conduct, breach of which would constitute negligence," and that "the plaintiff failed to offer any evidence to establish any liability of the defendant under § 25-6-1, Code of Ala., subsection (a)(1), (2), (3), (4) and (5)."
The Sloans had a statutory, as well as a common law, duty to provide Billy with a safe working environment. Ala. Code 1975, § 25-1-1[2]; Hill v. Metal Reclamation, Inc., 348 So.2d 493 (Ala. 1977); Woodward Iron Co. v. Craig, 256 Ala. 37, *Page 919 53 So.2d 586 (1951). Curt Sloan's testimony at trial indicates not only that he knew of the conditions on the roof but also that he considered them dangerous:
 "Q You were aware of what all was up there on the house?
"A Yes, sir, very much so.
 "Q Not at the place where Billy fell, am I correct there were not any toe boards at all at the edge of the roof there?
"A You are correct.
 "Q Now, had y'all used toe boards on that project any other place?
"A Yes, sir.
"Q That was around on the other side, I guess?
"A Plus other places.
 "Q Now, do you have any judgment about whether it is good and safe and proper to have people working on a roof where there is, say, maybe, frost if there are not toe boards?
"A We don't get on the roof where there is frost.
"Q Because that's dangerous?
"A It is dangerous.
 "Q And the same would be true, I guess, as far as frost that had melted into dew, would that be true?
"A Same thing.
 "Q You considered that to be dangerous for a worker to be up there? If for some reason a worker was up there because of frost or dew, you would feel like there would need to be some kind of precaution above the ordinary, wouldn't you?
"A God give us enough sense of our own.
 "Q And employers have some duties concerning the work place, do they not?
"A Yes, sir.
 "Q You acknowledge that you have the duty to keep the work place safe for people that you hire and work?
"A So is the man that you hire.
"Q You do as the employer, don't you?
"A Yes, sir.
 "Q I don't know if you answered, but you believe it would be a good practice to have a toe board at a place where there might be frost on a roof if yo have to have somebody up there working?
 "THE WITNESS: Judge, I don't understand what he wants.
"THE COURT: Well, tell him that.
 "THE WITNESS: I don't understand what you want.
"Q Okay.
 "THE WITNESS: If I had knowed there was going to be frost, I would have the toe boards up. No, negative. If there was going to be frost there, we are not going to be there. You don't need toe boards.
"Q You consider that to be dangerous?
"A It is dangerous."
According to his testimony, Sloan also realized his duty as an employer to Billy That duty has been stated as follows:
 "[An employer must exercise] that degree of care which reasonable and prudent men exercise in their own affairs, or the care and diligence which a man o: ordinary care and prudence would exercise for his own protection, or the protection of his property. Williams v. Anniston Electric Gas Co., 164 Ala. 84, 51 So. 585 (1909). . . . This includes the duty to take reasonable steps, when viewed in relation to the degree of the risk, to guard against injury to the employee from that risk. Johnson v. Montgomery Baptist Hospital, 295 Ala. 250 326 So.2d 738 (1976)."
348 So.2d at 494.
Nathan Sloan also testified that he knew of the conditions of the roof and that he knew he had a duty to provide a reasonably safe place for Billy to work. The defendants had a duty to Billy Bellew which a jury could find was breached. We find that there was sufficient evidence to require submission to the jury and, therefore, preclude a directed verdict. We reverse the judgment based on the directed verdict and remand for a new trial. Because we are reversing on this ground, *Page 920 
discussion of the other issue raised on appeal is pretermitted.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.
[1] Bellew also made claims under the Alabama Extended Manufacturer's Liability Doctrine, for Workmen's Compensation Act benefits, and for loss of consortium, but withdrew those claims before trial.
[2] "§ 25-1-1. Duties of employers, etc., with respect toprovision of safe employment.
 "(a) Every employer shall furnish employment which shall be reasonably safe for the employees engaged therein and shall furnish and use safety devices and safeguards and shall adopt and use methods and processes reasonably adequate to render such employment and the places where the employment is performed reasonably safe for his employees and others who are not trespassers, and he shall do everything reasonably necessary to protect the life, health and safety of his employees and others who are not trespassers."