The plaintiff appeals from a summary judgment entered in favor of all defendants in an action in which the plaintiff claimed that the defendants negligently or wantonly failed to provide her with a safe workplace; fraudulently suppressed material facts; failed to "rescue"; and committed outrageous conduct.
Defendant Merritt Oil Company is owned by defendants Fred Walding and Rick Merritt. Defendant Everette W. Barnette is "sales coordinator" for Merritt Oil. Defendant Henry McCulley is the owner of a company that provides video/arcade game machines (including the "Klondike" machine) to businesses.
Barnette and Walding saw the Klondike machine in a convenience store in Wagarville, Alabama, and contacted McCulley about placing Klondike machines in Merritt Oil stores. McCulley placed the Klondike in Merritt Oil stores in Grove Hill, Thomasville, Creola, and Prichard in November 1992 on the basis of oral agreements between himself and Barnette (acting for Merritt Oil). Sixty percent of the profits from the games went to McCulley, and 40 percent to Merritt Oil.
The Klondike was removed from the Grove Hill store after a short time because customers were abusing the machine.
In Thomasville, the police chief told McCulley that he did not want a "gambling device" in his town, and a Thomasville police officer came to the Merritt Oil store there and ordered that the Klondike to be unplugged. The machine was unplugged for a short time; however, Walding, Merritt, and Barnette decided to plug it back in, and no further complaints about the Thomasville machine were received.
The city attorney in Creola ordered that the Klondike be removed from a Merritt Oil store in that town because of complaints that it was a "gambling device."
Despite these experiences, the defendants did not investigate the legality of the Klondike.
The plaintiff, LaNita Morris, was employed as a cashier in the Merritt Oil convenience store in Prichard. In November 1992, when McCulley placed the Klondike machine in the Prichard store, he showed Morris how the game worked and how to replace the quarters in the machine.
In December 1992, a Prichard police officer visited the Merritt Oil store and asked Morris to demonstrate to him how the machine worked. The officer returned to the police station and, after consulting the Code of Alabama, decided that the Klondike was an illegal gambling device. The officer returned *Page 1141 
to the store, confiscated the Klondike, and arrested Morris. Three charges were filed by the Prichard police regarding the Klondike: 1) operating a vending machine without a vending license; 2) conspiring to promote gambling; and 3) promoting gambling. Morris was charged only with promoting gambling; however, this charge was nol-prossed.
In May 1993, the attorney general's office issued an opinion stating that, under Alabama law, the Klondike was an illegal gambling device.
Morris sued Merritt Oil; its owners, Fred Walding and Rick Merritt; its sales coordinator, Everette W. Barnette; and Henry McCulley. Her complaint alleged negligence and wantonness in placing an illegal gambling device in the store; negligence and wantonness in failing to investigate the legality of the device before placing it in the store; failure to provide Morris a safe place to work; failure to "rescue" Morris when she was arrested, or failure to take reasonable steps to protect Morris; suppression of material facts regarding the alleged gambling device; and outrageous conduct.
Barnette and Merritt Oil cross-claimed against McCulley, alleging fraud, specifically that McCulley had fraudulently led them to believe that the machine was legal. The trial court granted the defendants' motions for summary judgment on Morris's claims against them, and granted McCulley's motion for a summary judgment on the cross-claims. Morris appealed.
Morris acknowledges that there is no Alabama precedent for her claims under the specific facts of this case. However, says Morris, pursuant to a basic and fundamental principle of law, she is due a remedy for the harm she has suffered: "[E]very person, for any injury done him, in his . . . person or reputation, shall have a remedy by due process of law." Ala. Const. 1901, Art. I, § 13.
The defendants point out that this constitutional provision applies only to rights that exist at the time of the injury:
 "Historically, § 13 . . . was viewed to apply only in instances where a litigant had a vested interest in a particular cause of action. . . .
 " 'When a duty has been breached producing a legal claim for damages, such claimant cannot be denied the benefit of his claim for the absence of a remedy. But this provision does not undertake to preserve existing duties against legislative change made before the breach occurs. There can be no claim for damages to the person or property of anyone except as it follows from the breach of a legal duty.' "
Reed v. Brunson, 527 So.2d 102, 114 (Ala. 1988) (quotingPickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939) (emphasis supplied)).
Morris, however, argues that she has "a vested interest in a particular cause of action" for the breach of various duties owed her by the defendants that she says proximately and foreseeably resulted in her alleged harm. Morris claims that the defendants breached duties they owed her (1) when they negligently and wantonly placed an illegal gambling device in the store where she worked; and (2) when they negligently and wantonly failed to investigate to determine whether the Klondike was a legal machine. These two allegations are the basis of Morris's contention that the defendants failed to provide her with a safe workplace. Further, says Morris, the defendants (1) suppressed a material fact — the illegality of the Klondike machine — and thereby breached their duty to inform her of a circumstance that would have affected her decision to work in the Merritt Oil store; and (2) breached their duty to "rescue" her when she was arrested.
 " 'To recover in a negligence action, the plaintiff must prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff as a result of that breach.' "
Kelly v. M. Trigg Enterprises, Inc., 605 So.2d 1185, 1190 (Ala. 1992) (quoting Hall v. Thomas, 564 So.2d 936, 937 (Ala. 1990)).
 "Whether there is a duty is the threshold inquiry in a negligence case. 'It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty.' Morton v. Prescott, *Page 1142 564 So.2d 913, 915 (Ala. 1990). 'The trial court must determine whether a duty existed and, if so, the extent of that duty.' Perkins v. Dean, 570 So.2d 1217, 1220 (Ala. 1990). . . . 'The ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised.' Buchanan v. Merger Enterprises, Inc., 463 So.2d 121, 126 (Ala. 1984.)"
Ledbetter v. United American Ins. Co., 624 So.2d 1371, 1373
(Ala. 1993).
There was no evidence before the trial court to indicate that defendant Henry McCulley owed any duty to Morris. McCulley's business is to provide video/arcade games to businesses that request such products. At the request of Merritt Oil, McCulley supplied Klondike machines to Merritt Oil convenience stores, believing the Klondike to be a legal game. McCulley's only contact with Morris was in demonstrating to her how to maintain the Klondike and how to explain its operation to customers. Morris presented no evidence of a relationship between herself and McCulley that would support a finding that McCulley owed any duty to Morris. The summary judgment was correctly entered in favor of McCulley.
Procter Gamble Co. v. Staples, 551 So.2d 949 (Ala. 1989), addressed the duty to provide a safe workplace:
 "Reading [Ala. Code 1975, § 25-1-1(a) and § 25-1-1(c)(1)] together, we conclude that the duty to provide a safe workplace is imposed upon the one who has control or custody of the employment or place of employment."
551 So.2d at 951. And, in Harris v. Hand, 530 So.2d 191 (Ala. 1988), this Court held:
 "Section 25-1-1 imposes on employers the duty to provide reasonably safe employment. A co-employee is not liable to another employee unless he (1) voluntarily assumed or (2) was delegated his employer's duty to provide a reasonably safe workplace. Fontenot v. Bramlett, 470 So.2d 669, 672
(Ala. 1985). . . .
 " '[T]he fact that a [co-employee] is in an administrative or supervisory position alone does not make that person liable.' Clements v. Webster, 425 So.2d 1058, 1060 (Ala. 1982). . . . As this Court stated recently:
 " ' "Liability of a co-employee must be predicated upon the breach of a personal duty owed to the injured employee and not upon general administrative responsibilities of the third-party co-employee defendant. It is insufficient, for example, to merely allege and prove a generalized duty of a co-employee to provide the injured employee with a reasonably safe place to work. An employee is not liable for injuries to another employee because of the failure of the employer to furnish a safe place to work or suitable appliances or instrumentalities. 57 C.J.S. Master and Servant § 578 n. 33, and accompanying text at 350.
 " ' "The burden is upon the injured party to prove with specificity the defendant's delegated or assumed duty and its breach for which recovery is sought. The position he ocupies, without more, cannot serve as a basis for a co-employee's liability." '
 " 'Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334, 347 (Ala. 1980) (Jones, J., concurring in the result).' "
530 So.2d at 192 (emphasis in original).
Defendant Everette Barnette, as sales coordinator for Merritt Oil, exercised some authority with regard to the operation of Merritt Oil convenience stores and was a partner with Rick Merritt and Fred Walding in a separate business venture. Barnette, however, was not Morris's employer, nor did he have "control or custody of [Morris's] employment or place of employment." Procter Gamble, supra, 551 So.2d at 951. Barnette was not delegated, and he had not assumed, the duty to provide Morris with a safe workplace. The summary judgment was proper as to Barnette on this claim.
With regard to Merritt Oil, Merritt, and Walding ("the Merritt Oil defendants"), we note that the common law and Alabama's statutory law require an employer to provide employees with a reasonably safe workplace. Gossett v. TwinCounty Cable T.V., Inc., 594 So.2d 635 (Ala. 1992); Bellew v.Sloan, *Page 1143 536 So.2d 917 (Ala. 1988). Ala. Code 1975, § 25-1-1, provides:
 "(a) Every employer shall furnish employment which shall be reasonably safe for the employees engaged therein and shall furnish and use safety devices and safeguards and shall adopt and use methods and processes reasonably adequate to render such employment and the places where the employment is performed reasonably safe for his employees and others who are not trespassers, and he shall do everything reasonably necessary to protect the life, health, and safety of his employees and others who are not trespassers.
". . . .
 "(c) For the purposes of this section, the following terms shall have the meanings ascribed to them by this subsection:
". . . .
 "(3) SAFE and SAFETY. Such terms, applied to any employment or place of employment, . . . shall mean 'reasonably safe' or 'reasonable safety' consistent with the lawful purpose of the use and occupancy of the place of employment . . . and the inherent danger of the employment, the process, operation or situation involved, and, shall include conditions and methods of sanitation and hygiene reasonably necessary for the protection of the life, health and safety of the employees and others who are not trespassers."
(Emphasis added.)
According to Morris, the emphasized portion of § 25-1-1(c)(3) requires that the workplace be used for a "lawful purpose." Therefore, reasons Morris, when the Merritt Oil defendants — who did have the "control or custody of [Morris's] employment or place of employment" (Procter Gamble, supra), installed an illegal gambling device in the Merritt Oil convenience store where she worked, they breached their duty to provide her with a reasonably safe workplace. Morris contends that the foreseeable and proximate result of the installation of the Klondike was that the police would confiscate it as an illegal gambling device and arrest her as the person exercising control over the game.
Morris further argues that the Merritt Oil defendants' duty to provide a safe workplace includes the duty to exercise reasonable care to inspect and investigate "devices furnished to employees to be used in their employment." The evidence revealed that the Merritt Oil defendants may have had questions about the legality of the Klondike but failed to make an effort to determine whether it was an illegal gambling device. This failure, says Morris, was a wanton and intentional breach of the duty to inspect a device that, uninspected and added to the convenience store premises, rendered Morris's workplace unsafe.
Based on these facts, says Morris, there was substantial evidence that the Merritt Oil defendants acted "negligently, recklessly, wantonly, willfully, and/or intentionally" in breaching their duty to provide her with a safe workplace.
The Merritt Oil defendants respond by first contending that Morris has stretched the application of § 25-1-1 beyond the legislative intent behind it. This statute, they say, was designed to protect employees from inherent or intrinsic dangers in the workplace or from violation of safety regulations that make the workplace unsafe to the physical "life, health, and safety" of the employees. The Merritt Oil defendants claim that they did not breach this statutory duty because there was no danger to Morris's life, health, or safety.
The Merritt Oil defendants also argue that Morris's interpretation of § 25-1-1 would impose upon employers an unreasonable duty — to anticipate and foresee any possible intervention by law enforcement in an employer's place of business. This interpretation of § 25-1-1, say the Merritt Oil defendants, is strained and exceeds the legislative intent behind the statute and, if accepted, would effectively prevent any reasonable application of the statute.
The Merritt Oil defendants also claim that Morris has unreasonably construed Alabama law regarding employers' inspecting devices they furnish their employees for use at work. Morris cites two cases in support of her argument:Fuller v. Lanett Bleaching Dye Works, 190 Ala. 208,67 So. 378 (1914); and *Page 1144 Epsey v. Cahaba Coal Co., 186 Ala. 160, 64 So. 753 (1914).Fuller, however, dealt with injuries and death resulting from the fall of a defective freight elevator, and Epsey involved a defective engine valve. Again, say the Merritt Oil defendants, the presence of the Klondike in the Prichard convenience store posed no threat to Morris's "life, health, and safety"; therefore, they argue, there was no breach of the duty to provide Morris with a safe workplace.
There is no doubt that the Merritt Oil defendants were charged with the duty to provide Morris with a safe workplace. The foreseeability of the harm that could result to Morris from their conduct, therefore, is the test of whether they breached their duty to provide Morris with a safe workplace. Ledbetter,supra. Foreseeability is normally an issue to be decided by the trier of fact and not one to be resolved by the trial court on a motion for summary judgment. Thetford v. City of Clanton,605 So.2d 835 (Ala. 1992).
That the Merritt Oil defendants breached their duty to provide her with a safe workplace cannot be inferred from the fact that the Klondike machine was installed in the Merritt Oil convenience store in Prichard. It is true that the Merritt Oil defendants' experiences with law enforcement representatives at other locations regarding the questionable legality of the Klondike machines made it foreseeable that confrontations with law enforcement were likely to occur at the Prichard store. The evidence, however, reveals that all previous law enforcement interventions consisted of requests that the Klondike be removed or unplugged, with the additional evidence that a machine that had been un plugged at the request of the police had been reactivated with no further complaint from the police. The evidence does not support the inference that the Merritt Oil defendants could have foreseen that Morris or another Merritt Oil employee would be arrested or jailed.
Additionally, there is no precedent for extending the provisions of § 25-1-1 to require that, in meeting the duty to provide employees with a safe workplace, an employer must ensure that nothing in the workplace disturbs the emotional well-being of the employees.
In light of the foregoing, we conclude that the trial court correctly entered the summary judgment in favor of the Merritt Oil defendants on the claim that they negligently or wantonly (see Valley Bldg. Supply, Inc. v. Lombus, 590 So.2d 142 (Ala. 1991)) failed to provide Morris with a safe workplace.[1]
In support of her claim that Barnette and the Merritt Oil defendants fraudulently suppressed the material fact of the illegality of the Klondike, Morris cites Baker v. Bennett,603 So.2d 928 (Ala. 1992), which held, in part, as follows:
 "To prove suppression of a material fact, a plaintiff must establish (1) that the defendant had a duty to disclose that fact, (2) that the defendant concealed or failed to disclose that fact, (3) that the concealment or failure to disclose induced the plaintiff to act, and (4) that the action caused injury to the plaintiff. Ala. Code 1975, § 6-5-102. See, also, Gary v. Kirkland, 514 So.2d 970 (Ala. 1987). Section 6-5-102 does not require proof of an intent to deceive; rather, a breach of the defendant's duty to disclose the suppressed facts is sufficient to trigger liability. Burlington Northern R.R. v. Warren, 574 So.2d 758 (Ala. 1990). Under § 6-5-102, a duty to disclose arises either from a confidential relationship between the parties or from the particular facts and circumstances of the case. The question of the existence of a duty to communicate under § 6-5-102 is for the jury, which should consider the relationship of the parties, *Page 1145 
the value of the particular facts suppressed, and the relative knowledge of each party. Lowder Realty, Inc. v. Odom, 495 So.2d 23 (Ala. 1986). Where the defendant had superior knowledge of the suppressed fact and the defrauded party has been induced to take action that otherwise might not have been taken, the obligation to disclose is particularly compelling. Dominick v. Dixie Nat'l Life Ins. Co., 809 F.2d 1559 (11th Cir. 1987)."
603 So.2d at 934-35. See, also, Townsend Ford v. Auto-OwnersIns. Co., 656 So.2d 360 (Ala. 1995).
Morris contends that Barnette and the Merritt Oil defendants had a duty to disclose to her that the Klondike could be an illegal gambling device because, she says, based on such a disclosure she could have exercised her right to act to protect herself against the results of having an illegal gambling device in the workplace. The defendants breached this duty, Morris says, by fraudulently suppressing such a material fact.
Barnette and the Merritt Oil defendants respond with the proposition that, "[a]s a matter of law, one can only be liable for concealing facts of which one has knowledge. Brasher v.First National Bank of Birmingham, 232 Ala. 340, 168 So. 42
(1936)." Harrell v. Dodson, 398 So.2d 272, 276 (Ala. 1981). See, also, Dodd v. Nelda Stephenson Chevrolet, Inc.,626 So.2d 1288 (Ala. 1993). Further, " '[u]nder § 6-5-102, mere silence is not fraud unless confidential relations or special circumstances exist; active concealment or misrepresentation must be present.' " King v. National Foundation Life Ins. Co.,541 So.2d 502, 505 (Ala. 1989) (quoting Berkel Co.Contractors, Inc. v. Providence Hosp., 454 So.2d 496, 505 (Ala. 1984)).
There was no evidence that the defendants knew the Klondike to be an illegal gambling device when it was installed in the Prichard store in November 1992. Morris presented no credible evidence that, before her arrest in December 1992, the defendants knew the Klondike was illegal. The defendants became aware that the game was illegal when the attorney general's office issued its opinion in May 1993. There was no evidence of fraudulent suppression of material facts to the detriment of Morris. The summary judgment in favor of the defendants was proper as to this claim.
Morris also claims that the defendants deliberately chose not to aid her when she was in peril and that they made this choice with a full appreciation of its consequences. The defendants, say Morris, performed the criminal act of installing an illegal gambling device and then chose to allow her to pay the consequences for that criminal act.
 "As a general rule, in the absence of some special relation between the parties, the law imposes no duty on one person actively to protect or assist in the preservation of the person or property of another from injury, even though the means by which harm can be averted are in his possession. . . . And even the fact that a person realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such actions."
57A Am.Jur.2d Negligence § 98, p. 152 (1989). Restatement(Second) of Torts, §§ 314-22, pp. 116-35 (1965), sets out "standards of conduct" that are in accord with this statement from Am.Jur.2d. The comments to these Restatement sections focus upon the duty that arises, for example, on the part of an employer when its employee suffers "serious harm." This duty on the part of an employer is predicated upon the employment relationship and a knowledge of the potentially harmful condition.
We have held that the defendants had no reason to believe there was a likelihood that Morris would be arrested or would suffer any other kind of harm as a result of her employment relationship with Merritt Oil; therefore, we must hold that the defendants were under no duty to "rescue" Morris when she was arrested.
In support of her claim of outrageous conduct (the tort of "outrage"), Morris argues that although "no single incident or fact" amounts to outrageous conduct on the part of the defendants, the facts, all taken together and examined as a whole, show that the defendants conspired to intentionally inflict *Page 1146 
emotional distress upon Morris because, she says, they knew or should have known that her arrest was the result that would occur from their conduct, citing U.S.A. Oil, Inc. v. Smith,415 So.2d 1098 (Ala.Civ.App. 1982), cert. denied, 415 So.2d 1102
(Ala. 1982).
 "The tort of outrageous conduct was first recognized by this Court in American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1981), in which the Court held that 'one who by extreme and outrageous conduct intentionally or recklessly[2]
causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress.' Id., at 365. In order for a plaintiff to recover, the conduct of the defendant must be 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' Id."
Busby v. Truswal Systems Corp., 551 So.2d 322, 324 (Ala. 1989).
Morris testified that, although she went to a psychiatrist's office, she was never seen or treated by a psychiatrist for emotional distress. Morris also testified that, when the criminal charge against her was nol-prossed, her emotional state improved. Morris claimed that she experienced physical symptoms such as sleeplessness, lack of appetite, and crying when the incident was mentioned; however, she did not testify that her life was ever "intolerable."
The evidence does not support an inference that Barnette or the Merritt Oil defendants intentionally or recklessly inflicted emotional distress upon Morris. The conduct engaged in by Barnette and the Merritt Oil defendants was entrepreneurial in nature and nothing in the evidence suggests it was intended to harm Morris. Based on the information available to them when they decided to install the Klondike, we must conclude that the manner in which these defendants conducted themselves will not support a finding of reckless or intentional infliction of emotional distress. Consequently, the summary judgment was also proper on the outrage claim.
The summary judgment is affirmed.
AFFIRMED.
HOOPER, C.J., and SHORES, HOUSTON, INGRAM, and BUTTS, JJ., concur.
MADDOX, J., concurs in the result.
KENNEDY, J., dissents.
[1] In Peters v. Calhoun County Commission, 669 So.2d 847 (Ala. 1995), the Court held that "[w]hile the issue of foreseeability in the context of an intervening cause may be decided as a matter of law, . . . it is more commonly a question for the trier of fact." 669 So.2d at 850. However, although Barnette argues "intervening cause," the evidence does not support an inference that the intervention of law enforcement would result in the arrest and jailing of an employee of a convenience store where a Klondike machine had been installed. All of the prior incidents had resulted in law enforcement's requesting that the machine be unplugged or be removed from the store. There was even evidence that at one of the stores deputy sheriffs had played the Klondike.
[2] We have written:
 "We note that this Court has previously refused to recognize negligent infliction of emotional distress as actionable. See Reserve National Ins. Co. v. Crowell, 614 So.2d 1005 (Ala. 1993), cert. denied, 510 U.S. 824, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993); Allen v. Walker, 569 So.2d 350
(Ala. 1990). We again reject the argument that we should recognize a cause of action that would allow one to recover damages for emotional distress caused by another's mere neglect."
Gideon v. Norfolk Southern Corp., 633 So.2d 453, 453-54 (Ala. 1994).