# Birmingham Rolling Mill Company *v.* Rockhold.

*Action to Recover Damages for Personal Injuries.*

1.  *Pleading; averments of complaint; what sufficient description of defects causing injury.*—In an action for personal injuries, caused from the breaking of a bridge, or walkway, over a ditch, a count of the complaint, which alleges that said bridge, or walkway, was weak, insecure or otherwise defective, sufficiently alleges the nature of the defect.

[Birmingham Rolling Mill Company v. Rockhold.]

2. *Same; same; sufficiency of allegation that defective bridge was part of ways, works or machinery.*—A count of the complaint, which alleges that the defendant was injured by the breaking of a bridge, or walkway, over a ditch, and that the injury suffered was the proximate consequence of a defect in the condition of the ways, works, machinery or plant used in connection with the business of the defendant,—viz., that said bridge, or walkway was weak, insecure or otherwise defective,—sufficiently shows that the bridge was a part of the ways, works or machinery.

3. *General charge; when properly refused.*—Where the testimony of the plaintiff, though uncorroborated, tends to show that the injury was caused by the breaking of a plank, or walkway used as a bridge, and that said break was the result of a plank being so worn by constant use as to be dangerous, and that this condition could have been discovered by an inspection of the bridge, the affirmative charge for the defendant was properly refused, it being a question of fact for the jury to determine whether the bridge was defective, and whether such condition was, or could have been known to the defendant by the exercise of ordinary care.

4. *Action for personal injuries; evidence.*—In an action for personal injuries, it is incompetent to show that the resident physician at the hospital, where plaintiff was treated for his injuries, wanted to amputate plaintiff's leg, and that plaintiff had to leave the hospital because he would not let his leg be amputated.

5. *Same; what improper charge.*—Where there was evidence that the bridge, or walkway, which caused the injury to plaintiff, was, subsequently to the injury, removed and another substituted therefor, a charge that there is no evidence in this case that the bridge, or walkway was removed by defendant, or any of its agents, because of notice of the suit of plaintiff, was properly refused.

6. *Same; same.*—A charge which is abstract is properly refused.

7. *Same; employe entitled to protection from injury when going for a drink of water.*—An employe is entitled to the same protection from injury when he leaves his work for necessary purposes as when he is actually working, and the employe has the right to pass over ways provided by the employer in going to and from his place of business for such necessary purpose.

APPEAL from the BirminghamCity Court.

Tried before the Hon. WILLIAM W. WILKERSON.

This was an action for personal injuries brought by the appellee against the appellant.

The complaint contained only one count, which was in words and figures as follows: "The plaintiff claims of the defendant ten thousand dollars, as damages, for that, heretofore, to-wit, on the 12th day of August, 1901, defendant was operating a rolling mill in or near Birmingham, in Jefferson County, Alabama; that on said day, while plaintiff was in the service or employment of defendant and engaged in or about the said business of defendant, while crossing over a ditch or trench upon and along a bridge or walkway over said ditch or trench, said bridge or walkway broke and gave way and, as a proximate consequence thereof, plaintiff fell, or was cast, into said ditch or trench, and his knee and other parts of his body bruised, cut and otherwise injured, and plaintiff was shocked and his knee was made stiff, and he was crippled and disfigured for life, and was rendered for a long time unable to work or earn money, and was rendered permanently less able to work and earn money, and he was put to great trouble, inconvenience and expense for medicine, medical attention, care and nursing in or about his efforts to heal and cure said wounds and injuries."

"Plaintiff alleges that said bridge or walkway broke or gave way as aforesaid and plaintiff suffered such injuries and damages, by reason and as a proximate consequence of a defect in the condition of the ways, works, machinery, or plant used in or connected with the said business of defendant, which said defect arose from or had not been discovered or remedied owing to the negligence of defendant or of some person in the service or employment of defendant and intrusted by it with the duty of seeing that said ways, works, machinery or plant were in proper condition, viz; said bridge or walkway was weak, insecure or otherwise defective."

"All to plaintiff's damage, ten. thousand dollars, wherefore he sues.".

Defendant demurred to this complaint upon the following grounds:

1. "For, that the averments of the alleged defects in the condition of the ways, works, machinery or plant of the defendant, is too vague, indefinite and uncertain."

2. "For that it is not pointed out in said complaint wherein the said bridge or walkway was kept insecure or otherwise defective."

3. "For that it is not sufficient, in charging a defect in the condition of the ways, works, machinery or plant, to aver that the bridge was kept insecure or otherwise defective without setting out wherein said bridge was kept insecure or otherwise defective."

4. "For that the allegation of negligence in said count of said complaint is but the allegation of a conclusion."

Subsequently defendant amended its demurrer by adding thereto the following additional grounds:

1. "For that it is not averred in and by said complaint that the bridge or walkway mentioned in said complaint was a part of the ways, works, machinery or plant used in or connected with the said business of the said defendant."

2. "For that it appears, in and by said complaint, that said bridge or walkway was not a part of the ways, works, machinery or plant used in or connected with the said business of the said defendant."

3. "For that it appears in and by said complaint that the said bridge or walkway was not a part of the ways, of the said defendant."

4. "For that it does not appear from the said complaint that the said bridge or walkway was a part of the said ways of the said defendant."

5. "For that it does not appear, in and by said complaint, that said bridge or walkway was a part of the works of said defendant."

6. "For that it does not appear, in and by said complaint, that said bridge or walkway was a part of the machinery of the said defendant."

7. "For that it is averred in the alternative that said injuries and damages were suffered by reason and as a proximate consequence of the defect in the condition of the ways, works, machinery or plant used in or connected with the said business of the said defendant."

8. "For that it appears, in and by said complaint, that said injuries complained of were suffered by reason and as a proximate consequence of a defect in the condition of the ways, works, machinery or plant, used in or connected with the said business of defendant, and that said defect arose from or had not been discovered or remedied owing to the negligence of defendant, or of some person in the service or employment of defendant and entrusted by it with the duty of seeing that said ways, works, machinery or plant were in proper condition, and yet it fails to aver that such person, so in the service or employment of defendant, was entrusted by the defendant with the duty of seeing that said part of said ways, works, machinery or plant was that part thereof consisting of said bridge or walkway."

9. "For that it is averred, in any by said complaint, that said bridge or walkway was weak, insecure, or otherwise defective, and yet it fails to aver wherein it was defective."

Defendant then again amended its demurrer by adding as an additional ground the following: "For that it does not appear from the averments of the said complaint that the bridge or walkway was a part of the plant of the said defendant."

The testimony of the plaintiff tended to show that, while in the employ of the defendant company, he crossed over a bridge or walkway which traversed a ditch or trench in the defendant's mills; that he crossed this ditch for the purpose of getting a drink of water; that the barrel containing the ice water was on the opposite side of the ditch from that upon which plaintiff worked.

Plaintiff further testified that he was engaged in dragging steel from one part of the works to another and that the steel was hot and in doing such work men got heated very much and it was frequently necessary for them to drink water. He further testified that, when the plank or bridge gave way with him, he fell into the ditch and thereby sustained the injuries complained of and that the bridge or planks were not sufficiently strong to bear his weight. He further testified that, on the night that he was hurt, he spoke of his injuries to two fellow-workmen, Williams and Chambers, who constituted the crew working with himself. That, at the time of the injury, he was not sufficiently hurt to necessitate quitting work, but that the next morning his knee was in a bad condition from the accident and it was many months before he could work again. He further testified that, subsequent to the time of his injury, the plank or bridge which had broken with him was replaced by a new one.

The plaintiff, further testifying in his own behalf, stated that he was in a hospital in Birmingham being treated for the injuries caused by the accident sued for and that he left the hospital because he was told that he either had to submit to an amputation of the leg or leave the hospital. Plaintiff was asked this question by his attorney: "Tell the jury whether or not Dr. Fox (the resident physician at the hospital) wanted to cut your leg off." The defendant objected to the question as calling for incompetent and irrelevant testimony. The court stated that "It would not be competent whether or not Dr. Fox wanted to cut his leg off." The witness then averred, "I know I had to leave the hospital because I would not let my leg be amputated." The defendant moved to exclude this answer of the witness, but the court overruled this motion and defendant excepted. The action of the court in so refusing to exclude the answer of the witness constituted the third assignment of error.

The fellow workmen of the plaintiff, Chambers and

Williams, both denied any knowledge or recollection of the accident and stated that the plaintiff had said nothing to them about being hurt on the night he claims that he was hurt, nor for many months afterwards.

The defendant requested the court to give, among others, the following written charges, which the court refused to give and to such refusal the defendant separately and severally excepted.

5.  "If the jury believe the evidence they must find for the defendant."

1.  "There is no evidence in this case that the plank or bridge was removed by defendant or any of its agents because of notice of the suit of plaintiff."

The refusal of this charge formed the basis of the fourth assignment of error.

2.  "If the jury are reasonably satisfied from the evidence that the planks across the ditch were placed over the ditch for a temporary purpose, then it was not a part of the ways, or works of the defendant."

3.  "There is no evidence in this case that the planks or bridge, on or from which plaintiff claims to have fallen, was removed because of, or upon notice of, this suit."

6.  "If the jury are not reasonably satisfied from the evidence that defendant supplied water for its men, or if they believe from the evidence that the men furnished the water for their own use, or the use of their associates, then, in and while going to the water, plaintiff was not in the discharge of the duties for which he was employed by defendant."

7.  "It is incumbent in this case upon plaintiff to reasonably satisfy the jury that defendant furnished or provided water for him and other men, and, if the plaintiff has not reasonably satisfied the jury of this fact, then he has failed to show that, in going for water, he was in the discharge of the duties of his employment, and in that event he cannot recover."

There were verdict and judgment for the defendant for $1,386.00. Subsequently defendant made a motion for a new trial upon the following grounds:

1. "For that the verdict is contrary to the weight of the evidence."

2. "For that the verdict is excessive."

3. "For that the court erred in refusing the charge numbered five, requested by defendant in writing."

4. "For that the court erred in refusing charge numbered six, requested by defendant in writing."

5. "For that the court erred in refusing the charge numbered seven, requested by defendant in writing."

6. "For that the court erred in refusing defendant's objection to the testimony."

7. "For that the defendant was surprised by the testimony of its witnesses."

In support of said motion defendant offered the affidavit of Dr. Fox, the resident physician in the hospital at which plaintiff was treated, which affidavit was to the effect that nothing was ever said about amputating plaintiff's leg; also the affidavit of Dr. W. Y. W. Peters, visiting prysician of said hospital, to the same effect. Also the affidavit of L. M. Napier, the matron of the alms-house, to which plaintiff went before entering the hospital, which affidavit was to the effect that plaintiff's injuries were slight and that, while in the alms-house, he never complained of the injuries having been caused by the defendant company or stated that they were so caused, but that the general impression was that he claimed that his injuries were caused by falling off a street car or dummy. Several other affidavits to the same effect were offered by defendant in support of its motion for a new trial. This motion was overruled by the court and to this action of the court the defendant excepted.

WALKER, TILLMAN, CAMPBELL and WALKER, for appellant, cited.—*Jones v. L. & N. Ry. Co.*, 30 So. Reporter 580; *L. & N. Ry. Co. v. Jones*, 130 Ala. 456-470; *Zenida Coal Co.'s case*, 125 Ala. 118-127; 13 Ency. Pl. and Pr. 908; *Conrad v. Gray*, 109-134; *Woodson's case*, 94

[Birmingham Rolling Mill Company v. Rockhold.]

Ala. 147; *Davis' case,* 91 Ala. 494; *Gros's case,* 97 Ala.
220; *Birmingham Ry. Co. v. Owens,* 135 Ala. 154.

BOWMAN, HARSH and BEDDOW, *contra.--Mary Lee Coal
& Ry. Co. v. Chambliss,* 97 Ala. 172; *L. & N. Ry. Co.
v. Mothershed,* 97 Ala. 261; *A. G. S. R. R. Co.
v. Davis,* 119 Ala. 576; *Bear Creek Mill Co. v. Parker,*
134 Ala. 293; *Armstrong Admr. v. Mont. St. Ry. Co.,*
123 Ala. 244; *So. Ry. Co. v. Guyton,* 122 Ala. 231; *L. &
N. Ry. Co. v. Marbury Lumber Co.,* 125 Ala. 237; *L. &
N. R. R. Co. v. Jones,* 83 Ala. 376; *Laughran v. Brewer,*
113 Ala. 515; *R. & D. R. R. Co. v. Vance,* 93 Ala. 147;
*L. & N. R. R. Co. v. Hawkins,* 92 Ala. 241; *L. & N. R.
R. Co. v. Orr,* 94 Ala. 602; *G. P. R. R. Co. v. Davis,* 92
Ala. 307; *M. & M. R. R. Co. v. Crenshaw,* 65 Ala. 567;
*Leach et als. v. Bush,* 57 Ala. 145; *Hall v. Posey,* 79
Ala. 85; *M. & O. R. R. Co. v. Thomas,* 42 Ala. 672; *What-
ley v. Zenida Coal Co.,* 122 Ala. 127; *Van Tassell v. N.
Y. etc. Ry. Co.,* 20 N. Y. Supt. 710; *G. P. Ry. Co. v.
Davis,* 92 Ala. 301; *U. S. Rolling Stock Co. v. Weir,* 96
Ala. 400; *O'Mellis v. K. C. etc. R. R. Co.,* 115 Mo. 205;
*Dryer v. Lewis,* 57 Ala. 551; *Mont. Fur. Co. v. Harda-
way,* 104 Ala. 100; *Steele v. Tutwiler,* 57 Ala. 113; *Bar-
row v. Barrow,* 122 Ala. 194; *Williams v. Gallyow,* 107
Ala. 439; *R. R. Co. v. Ladd,* 92 Ala. 287; *Giddens v. Bol-
ling,* 92 Ala. 586; *White v. Craft,* 91 Ala. 139; *Waxel-
baum v. Bell,* 91 Ala. 331; *Armstead v. Thompson,* 91
Ala. 127; Dresser Employers' Liability Act. Sec. 13 et
seq.—*K. C. M. & B. R. R. Co. v. Phillips,* 98 Ala. 168;
*Bayonne Knife Co. v. Umbenhauer,* 107 Ala. 496; *Cobb
v. Malone,* 92 Ala. 630; *Jones et als v. Tucker,* 31 So.
Reporter 21; *B. R. & E. Co. v. Dorse,* 131 Ala. 177; *Mil-
lott v. N. Y. N. E. R. R. Co.,* 64 Hun. 634.

SIMPSON, J.—This was an action by an employe,
for damages, on account of personal injuries received
from the breaking of a bridge or walkway over a ditch
or trench.

The first assignment of error raises the question of

the correctness of the action of the court in overruling defendant's demurrer to the complaint. The 1st, 2nd, 3rd and 4th clauses, set out in the amendment to the demurrer, raise the point as to whether the complaint was defective in not specifically describing the nature of the defect in the bridge. These causes of demurrer were not well taken, and there is no error in the action of the court in overruling them.—*E. E. Jackson v. Lola Cunningham*, decided at the present term of this Court.

2. The causes of demurrer No. 1, 4, 5 and 6, set forth in the amendment to the demurrer, assert the proposition that the complaint does not aver or show that said bridge was a part of the ways, works, or machinery.

The case of *Ga. Pac. Ry. Co. v. Davis*, 92 Ala. 306, where the allegation was that "The defendant, by its neglect and want of care, allowed its roadway to be and become greatly out of repair," etc., "And by reason thereof the plaintiff  *  *  *  *  was violently struck against a projecting rock," this Court says, "It would require a good deal of ingenuity to draw, from these facts, any other conclusion  *  *  *  than that the defect in the roadway consisted in the projection of the rock so nearly to passing cars as to strike brakeman."

In the complaint, now under consideration, it is alleged that said bridge gave way, etc., "By reason  *  *  *  of a defect in the condition of the ways, works, etc.," (using the statutory language) and adding, "Viz; said bridge, or walkway was weak, insecure or otherwise defective."

We think the language of the case just quoted applies, and consequently there was no error in overruling these causes of demurrers.

(3) For the same reason causes 2 and 3, in said amendment to the demurrer, are not well taken.

(4) The 7th cause of demurrer does not seem to be insisted on, in the brief of counsel for appellant, and we see no error in the action of the court thereon.

(5)    The 8th cause of demurrer is not insisted on, in the brief of counsel for appellant.

(6)    The second assignment of error relates to the refusal of the court to give the general charge in favor of defendant.    The plaintiff himself was the only witness in his behalf, and, according to his testimony, there was a bridge or walkway composed of two planks, each twelve or fourteen inches wide, bolted together, over a ditch supposed to be six or eight feet deep, over which he and other employes were in the habit of going to a water barrel, on the other side of the ditch, though they could walk around the head of the ditch by going "The length of the shed."    Plaintiff had been over this bridge or walkway a number of times that night, but, at the time complained of, the edge of the plank under his left foot split off, and he fell and received the injury complained of.    He had not noticed anything wrong with the bridge before, but examined it after the accident and found that the plank had split off from time to time. The part that split off had worn thin from walking on it.    There was no trouble for a man, who would go there to examine it, to have seen this, if he had looked under the plank, or to know it by feeling it.    Witness could not tell what the thickness of the planks were originally, nor how thick at the time of the accident.    At this time (of accident) it might have been three fourths of an inch or one inch, but the witness says "Honestly" he does not know, but knows it was insufficient to bear his weight.

The bridge was used before, and continued to be used sometime after, the accident and did not break with any one else.

Witness for defendant stated that the bridge or walkway was placed there for the "Catcher" who had to go round in quick time, that, in going to the water barrel, one could avoid the bridge and go round on the ground by going five feet further; that the chipped off place had been that way for some time, but that it chipped off only at the end where the plank rested on the ground, and not over the ditch at all; that there was no indication of any recent break or chipped place; that two electric lights

[Birmingham Rolling Mill Co. v. Rockhold.]

made it easy to see the plank at night; that the ditch was four feet wide, and the planks five and a half or six feet long, and one of the witnesses, who was the "Catcher," stated that, some time after the accident, he was going over the bridge, and, just having come from looking at the molten metal, his eyes were so blinded that he could not see the bridge and came near missing his foot-hold, and he told the boss if he got hurt there "There would be something doing;" he supposed that one of the planks was a foot wide and the other a quarter of a foot.

A new bridge was substituted for the old one. The new one was one plank sixteen inches wide and one and a half or two inches thick.

(7) In deciding upon the question of giving the general charge for the defendant, the view of the testimony most favorable to the plaintiff must be taken, and, if there is any conflict, the statements of the plaintiff must be considered the true account of the facts.

The burden of proof is upon the plaintiff to show the defect, and to show that it "Arose from, or had not been discovered or remedied, owing to the negligence of the master or employer, or some person in the service of the master or employer and entrusted by him with the duty of seeing that the ways, works, machinery or plant were in proper condition."—Code of 1896 § 1749; *Seaboard Mfg. Co. v. Woodson,* 94 Ala. 143, 147; s. c., 98 Ala. 378, 382; *U. S. Rolling Stock Co. v. Weir,* 96 Ala. 397; *L. & N. R. R. Co. v. Davis,* 91 Ala. 487.

While there is no direct proof as to how long the bridge was in a dangerous condition, nor that such condition was known to, or could, by ordinary care, have been discovered by the employer, or some person in his service charged as the statute prescribes. Yet the Court holds that, inasmuch as the testimony of the plaintiff shows that the break occurred by reason of the fact that the plank had become so worn by constant use as to be dangerous, and that this condition could have been discovered by an inspection of the bridge, it was a question for the jury to consider, as to how long it had been in such condition and whether it was known or could have been known, by the exercise of ordinary care. There was

no error in the refusal of the court to give the general charge in favor of the defendant.

(8)    The third assignment of error is sustained. The answer of the witness was to a question which had been decided by the court to be illegal, and was also irrelevant to the issues of this case.

(9)    The charge referred to in the 4th assignment of error did not relate to an inquiry material to the issue before the court, and was properly refused.—*Crawford, Admr. v. Jones,* 54 Ala. 459, 462.

(10)    Charge No. 2, requested by defendant, was abstract, there being no testimony to the effect that the planks were placed across the ditch for a temporary purpose.

(11)    Charge No. 3 was properly refused for the same reason stated in reference to 4th assignment of error.

(12)    The 7th assignment of error claims that the court erred in refusing charge No. 4, requested by defendant, but the record does not show any such charge refused.

(13)    Charge six, requested by the defendant, was properly refused because it is not a material inquiry who furnished the water.    While the mere act of getting water is not a part of the "Duties" of the employe, yet it is a physical necessity which must be attended to while the employe is engaged in his duties, and he is entitled to the same protection, in the interval when he leaves his work to get water, as when he is actually working, and, whether the water is provided by the employer or by himself, the employe has a right to pass over the "Ways," provided by the employer, in going to and from the place where his thirst is slaked.

(14)    The same reasons show that there was no error in the refusal of charge No. 7, requested by defendant.

(15)    Upon the question of the refusal of the court to grant the motion for a new trial.    The testimony of plaintiff seems to be entirely uncorroborated by any other witness.    He could not remember the name of the lady with whom he boarded, nor the physician who came to see him that night.    The only persons whom he does

identify are the witnesses, Chambers, the "Catcher," Williams, at the rolling mill, and Dr. Fox, at the almshouse. He states that, after the accident, he sat down, rubbed his knee awhile, and went back to work; that the men were waiting for some metal to be heated, and he thinks he told Williams that he fell, and knows that Williams saw him, because, as he was struggling to get up, Williams spoke to him, saying, "Be careful or you will kill yourself," or, "Hurt yourself." Williams says that they worked together that night, worked only about two hours, when work ceased, and he and plaintiff remained there an hour or an hour and a half, that they ate together the supper which had been left by the "Boss," and went home, and he heard nothing about the accident, and knew nothing of plaintiff being hurt, until five to seven months after when he met him and he was limping.

. Plaintiff states that he left the alms-house because Dr. Fox told him that he would have to have his leg cut off or leave.

Dr. Fox says there never was anything said about cutting his leg off, that he did not consider the sprain serious, did not even order any liniment for it, and plaintiff left of his own accord. The matron at the alms-house says it did not seem to be a bad sprain; that, if anything had been said about his having been hurt at the rolling mill, she would have heard it; that she heard nothing of that kind, but did hear that he drank a good deal and probably fell from the dummy; that she was satisfied that he did not claim to be injured at the rolling mill, but that he claimed to have been by the street railway. The witness Chambers contradicts him about the split place on the bridge. Chambers stating that he examined the bridge after the accident, and that there was no recent split on it, the only split being an old one, not over the ditch at all, but on the end of the plank where it was resting on the ground.

Under the circumstances, we think the great weight of the evidence is opposed to the verdict of the jury and the new trial should have been granted.—*Birmingham Elec. Ry. v. Doss,* 131 Ala. 177; *Birmingham Elec. Ry.*

[Ingram *et al.* v. Ingram.]

*v. Clay,* 108 Ala. 233, 238; *Birmingham Ry. Light & Power Co. v. Owens,* 135 Ala. 154.

For the errors pointed out the judgment of the court is reversed and the cause remanded.

McCLELLAN, C. J., TYSON and ANDERSON, J.J., concurring.