(94 South. 559)

## HARRIS, CORTNER & CO. v. UNION COTTON OIL CO. (8 Div. 485.)

(Supreme Court of Alabama. Oct. 26, 1922. Rehearing Denied Dec. 7, 1922.)

**1. Evidence ⚙ 557—Analyzed sample held sufficiently identified as taken from cotton seed shipped.**

In action involving condition of cotton seed shipped, an analyst *held* properly permitted to testify that he received a sample bag of cotton seed marked a certain date and as taken from a certain car, as against the objection that the evidence was insufficient to identify the seed in the bag as the same seed that came from the car in question.

**2. Evidence ⚙ 158(28)—Certificate of analysis of cotton seed to plaintiff under contract of sale held properly admitted.**

Where a stenographer made out certificates as to analysis of cotton seed from the books in the laboratory, and the correctness of the contents of the certificates was authenticated by an examination under oath of the person who made the analysis, who had personal knowledge of the correctness of the certificates, the certificates were properly admitted in evidence over the objection that they were not the original certificates and that the books in the laboratory contained the original and the best evidence.

**3. Trial ⚙ 253(5)—Instruction held defective as pretermitting issue.**

In an action to recover part of purchase price paid for cotton seed, the court properly refused, as pretermitting shortage in weight of seed, an instruction requested by defendant: "If the seed were in good condition and of the quality called for by the agreement of sale,

when they were placed in the car for shipment, then, if the jury believe the evidence, the verdict must be for the defendants for the full amount of any balance unpaid on the contract price, with 8 per cent. interest."

**4. Sales ⬅⬆398—Charge held properly refused as misleading.**

In an action to recover purchase price paid for cotton seed shipped, the court refused defendants' request to charge, "if the seed were all right when shipped, then it makes no difference what defendants promised to do by way of making good for any bad condition on arrival at B.; for, if the seed were all right when shipped, there was no consideration for any such promise;" since the words "all right" were calculated to mislead the jury as to the condition of the seed required by the contract between the parties.

**5. Trial ⬅⬆260(1)—No error in refusing covered instructions.**

The court will not be put in error for refusing to give requested charges where the principles of law attempted to be declared are sufficiently covered by other written charges given at the request of the party.

**6. Sales ⬅⬆89—Agreement on discovery of damage to shipment held to measure rights of parties.**

In action to recover money paid for cotton seed shipped, the court properly instructed that: "If the seed were not good, sound, clean dry cotton seed at the time the shipment was delivered to and accepted by the railroad, and they were hot and damaged when received by the plaintiff; and if plaintiff and defendant agreed that the seed should be accepted and unloaded by the plaintiff and a sample submitted to the P. Laboratories, and settlement would be made according to the rules of the Interstate Cotton Seed Crushers' Association, then I charge the jury that said agreement measures the rights of the parties in such transaction."

**7. Appeal and error ⬅⬆1078(1)—Matters not insisted on in argument regarded as waived.**

Errors assigned, but not insisted on in argument, will be regarded as waived.

Appeal from Circuit Court, Morgan County; Osceola Kyle, Judge.

Action by the Union Cotton Oil Company against Harris, Cortner & Co. From a judgment for plaintiff, defendants appeal. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Affirmed.

Charges 1 and 18 requested by the defendants and refused by the trial court read:

"(1) If the seed were in good condition and of the quality called for by the agreement of sale, when they were placed in the car for shipment, then, if the jury believe the evidence, the verdict must be for the defendants for the full amount of any balance unpaid on the contract price, with 8 per cent. interest from December 1, 1919.

"(18) If the seed were all right when shipped, then it makes no difference what defend-

ants promised to do by way of making good for any bad condition on arrival at Birmingham; for, if the seed were all right when shipped, there was no consideration for any such promise."

E. W. Godbey, of Decatur, for appellants.

Evidence of the general course of business followed in plaintiff's office cannot supply the missing link in the evidentiary chain.' 120 Mo. App. 203, 96 S. W. 682; 198 N. Y. 175, 91 N. E. 371, 139 Am. St. Rep. 806, 19 Ann. Cas. 649; 28 Vt. 316, 67 Am. Dec. 717; 15 Md. 150, 74 Am. Dec. 562; 204 Mo. App. 285, 223 S. W. 944.

Callahan & Harris, of Decatur, for appellee.

The agreement to submit the matter to the Picard Laboratories was in the nature of a modification of the original contract of sale, and the mutual consent of the parties was sufficient, without any new consideration. 199 N. Y. 65, 92 N. E. 98; 145 Ala. 605, 40 South. 126; 198 Ala. 283, 73 South. 507; 205 Ala. 571, 88 South. 667.

MILLER, J. This is a suit by Union Cotton Oil Company, a corporation, against Harris, Cortner & Co., a partnership composed of Richard Harris and others. There are two counts in the complaint. One is based on an account, and the other is for money had and received by the defendants to the use of the plaintiff.

There was a jury and verdict in favor of the plaintiff, judgment thereon by the court, and from it the defendants prosecute this appeal.

It is a suit to recover back some advance payments made by plaintiff to the defendants on a car of cotton seed shipped by the defendants, the appellants, to the plaintiff, appellee, at Birmingham from Trinity, Ala.

The defendants plead: General issue; set-off; acceptance by plaintiff of the car of seed after inspection under terms of sale, $95 per ton, f. o. b. cars; and acceptance of the car of seed after inspection under terms of sale, $95 per ton, f. o. b. cars, and recoupment for balance due, $717.62.

The plaintiff to the two pleas of acceptance of the car of seed replied: General issue; and the car was received and ascertained to be hot and damaged; before unloading telephone communication was had with defendants, and plaintiff declined to receive the seed in that condition; and plaintiff and defendants agreed for plaintiff to take the seed, have sample analyzed or graded, and settlement be made according to the grading made by Picard Laboratories and under the rules of Interstate Cotton Seed Crushers' Association, all of which was done; and under the grading the seed were worth $1,697.67, and plaintiff had paid defendants $2,150,

---

⬅⬆For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

which was $452.33 more than the amount due under the agreement.

To this special replication defendants filed general denial, and also rejoined specially that the seed were bought by plaintiff f. o. b. cars at defendants' station, and the seed were in good and fit condition when shipped, and there was no consideration for the alleged agreement over the telephone.

The purchase of two cars of cotton seed was made by plaintiff from the defendants over the telephone. After the telephone conversation each wrote the other a letter confirming the sale and purchase of the seed. The letter of defendant to plaintiff is as follows:

"Referring to telephone conversation we are pleased to confirm sale to you of 2 cars cotton seed, approximately 50 tons, at $95 per ton f. o. b. stations. One of these cars is to be shipped from Trinity, and the other from Belle Mina, Alabama."

The letter of plaintiff to defendant reads as follows:

"This will confirm purchase from you by phone to-day of 2 cars of sound, clean, dry cotton seed, at the price of $95.00 per ton f. o. b. cars your R. R. station, same to be shipped to us within fifteen days. Weight of seed upon arrival at our plant in Birmingham, Ala., to govern in settlement for same."

This letter contained this at the bottom after the signature:

"Draft for 75% with invoice & B/L. Balance upon receipt of seed."

A car designated as B. & O. 90918, said to contain 60,371 pounds of seed invoiced at $2,-867.62, was shipped from Trinity, Ala., to plaintiff at Birmingham about November 15, 1919. At the time of shipment defendants drew on plaintiff with bill of lading attached a draft for 75 per cent. of the invoice, which was $2,150. This draft was paid before the car of seed was received. When the car arrived, plaintiff claimed, and its testimony tended to show. the seed were hot and damaged. Then Mr. Searles, secretary of the plaintiff, called Mr. Cortner, member of the defendant partnership, and told him over the telephone the condition of the seed, and had this agreement with him:

"I told Mr. Cortner that his seed had arrived, and we had found upon inspection that they were hot and damaged, and that we could not accept the seed under the contract in that condition, and I told him the only condition under which we could handle the seed would be to have samples carefully drawn from all parts of the car and have the sample anaylzed in order to determine what the extent of the damage was, and that we would have this sample analyzed by the Picard Laboratories, in Birmingham, and would settle with him at whatever extent the damage was, as shown by the Picard Laboratories analysis, and according to the rules of the Interstate Cotton Crushers' Association; and Mr. Cortner agreed to that, and

instructed me to go ahead and unload the seed and make a draft on him for whatever the damage was, and he would pay the draft; and I also told Mr. Cortner over the phone at that time that there was an apparent shortage in weight on the car as indicated by the scale weight of the car when unloaded, and subtracted from the stencil weight on the side of the car, and Mr. Cortner said that he would also make good that shortage; so, after making that agreement over the phone, I O. K.'d this scale ticket, which gave instructions to Mr. Camp to unload the seed. That is the substance of my conversation with Mr. Cortner."

The defendant Cortner denies this conversation and agreement, but admits they had telephone conversations about the seed, and by letter or telephone there was something said or written about the shortage of weights.

Samples of seed were taken from different parts of the car. There was evidence that they were analyzed or graded by the Picard Laboratories, and, according to the analysis or grading showing the extent of the damage and on basis of the contract price of $95 per ton, the seed were worth as damaged $1,697.67, and that plaintiff had paid defendants, by draft on it, the sum of $2,150, which overpaid the value of the seed, as damaged, to the sum of $452.23.

[1] The court did not err in permitting Dr. Picard to testify that he received from the defendant a sample of cotton seed marked "November 23, 1919, B. & O. 90918." The defendants objected to it because it was not sufficiently identified. The car containing the seed was a B. & O. car No. 90918. There was evidence, when the samples of seed were drawn from this car, that some of the seed from each sample was placed in a bag and the bag was marked "November 23, 1919, B. & O. 90918." It was placed in a certain place in office of plaintiff for such samples. It was the duty and the custom of a servant woman to carry these bags found in that place to the Picard Laboratories for analysis. A similar bag with cotton seed containing those identical marks was on November 25, 1919, delivered to the Picard Laboratories. There was also evidence in regard to the bag of seed, as follows:

"There was no other company that sent them in containers that sent them in like they did. It would be impossible to confuse their samples with anybody else's. * * * On the date we received this sample, we did not get any other sample purporting to come out of a B. & O. car from the Union Cotton Oil Company. A negro woman they had at the Union Cotton Oil Company usually brought these seed to the laboratories, and they were placed on a receiving shelf, and either Dr. Picard or myself received all the samples."

[2] There was sufficient testimony tending to identify the seed in the bag in the laboratory as the same seed that came from the car of seed of defendants for the evidence

to be submitted to the jury for their consideration. The same kind of bag, with identically the same marks on it, containing seed of car of defendants which was in office of the plaintiff on November 23, 1919, was delivered to Picard Laboratories on November 25, 1919. It contained cotton seed, and the right number of the car of seed was on it. They were graded. The certificate C. & D. of Picard Laboratories of the grade or analysis of the seed were introduced in evidence by plaintiff over the objection and exception of the defendants. The defendants claim they are not the original certificates; that the books contained the original and best evidence. A Mr. Adams made the analysis or grade of the seed. It was entered on the books of the laboratory. A stenographer made out the certificates from the books. The correctness of the contents of the certificates is authenticated by the examination under oath of the person who made the analysis. Mr. Adams, who made the analysis or grade of the seed, from personal knowledge swore on examination as a witness in the cause that "the certificate shows moisture 13.9 per cent. and the seed 56 per cent. off, and that is the actual analysis and test I made and is correct. * * * The certificates I have here marked C. & D. are the certificates for this car of seed." The evidence showed the witness had personal knowledge of the correctness of the contents of the certificates, and that it was an analysis or grade of the samples of seed made by him from the bag of seed hereinbefore mentioned; and this evidence rendered the contents of these certificates as well as the certificate admissible.

[3-5] Written charges 1 and 18, requested by the defendants, were refused by the court. Charge 1 is defective in pretermitting shortage in weight of seed; it calls for full price regardless of shortage in weight; and the words "all right" used in charge 18 in regard to the seed are calculated to mislead the jury as to the condition of the seed required by the contract between the parties. Then the principles of law attempted to be declared by these charges applicable to the testimony in this case are fully covered by written charges Nos. 4, 5, 10, 11, 19, 21, 23, and 25, given by the court at the request of defendants. This being true, the court will not be put in error for refusing them. Republic Iron & Steel Co. v. Smith, 204 Ala. 607, 86 South. 908; Sheffield Iron Corporation v. Dennis, 204 Ala. 530, 86 South. 467.

[6] Written charge 1, requested by plaintiff and given by the court, reads as follows:

"If the seed were not good, sound, clean dry cotton seed at the time the shipment was delivered to and accepted by the railroad, and they were hot and damaged when received by the plaintiff, and if plaintiff and defendant agreed that the seed should be accepted and unloaded by the plaintiff, and a sample submitted to the Picard Laboratories and settlement would be made according to the rules of the Interstate Cotton Seed Crushers' Association, then I charge the jury that said agreement measures the rights of the parties in this transaction."

This charge states a correct principle of law applicable under the issues in this case to a phase of the evidence of the plaintiff which, if believed by the jury, would entitle plaintiff to recover; and the court did not err in giving it. If the seed were unsound, not sound, clean, dry seed, when shipped as called for by the original agreement, then the additional telephone agreement to meet the unprovided for condition of the seed, if made by the parties, was in the nature of a new contract to ascertain the amount of the damages, and the mutual consent of the parties to it, if made, was sufficient consideration to sustain it.

The motion of the defendants for a new trial was overruled by the court. There is evidence in the record tending to show the seed were not dry, clean, and sound when shipped as the contract required, that the modification of or addition to the contract was made by the parties by mutual consent over the telephone when this condition of the seed was discovered, and there is evidence, if believed by the jury, that would entitle the plaintiff to a verdict on account of the damaged condition of the seed when shipped.

The testimony of the defendants is in direct conflict with the evidence of the plaintiff on all material issues in the case. Their evidence tended to show the seed were dry, clean, and sound, when shipped, as per contract, and that no change was made by the parties in the contract in any way; and, if the evidence introduced by the defendants was believed by the jury, a verdict should have been returned by them in favor of the defendants. The trial court heard the evidence and saw the witnesses. His position is superior to ours to pass on the weight and credibility to give to this oral evidence of the witnesses. He overruled the motion. The evidence is amply sufficient to sustain the finding of facts by the jury. The evidence does not clearly convince us that the verdict is wrong and unjust; but if the evidence of plaintiff's witnesses was believed by the jury, then their verdict was right and just. The trial judge did not disturb it; and under the entire evidence in this case, we do not think it would be right for us to do so. Tenn. Coal, I. & R. Co. v. Wiggins, 198 Ala. 346, 73 South. 516; A. C. L. R. Co. v. Burkett, 207 Ala. 344, 92 South. 456, headnote 3.

[7] Many errors assigned have not been insisted on in argument. They will be regarded as waived by this court. Daniel v. Bradford, 132 Ala. 262, 31 South. 455; Clem v. Wise, 133 Ala. 403, 31 South. 986; Beyer v. Fields, 134 Ala. 236, 32 South. 742.

Finding no error in the record, the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.